A97A0530. MILLAN et al. v. RESIDENCE INN BY MARRIOTT, INC. et al.
(487 SE2d 431)

BEASLEY, Judge.

Linda and Robert Millan, as next friends and natural guardians of their 14-year-old daughter Audrey, sought damages from Roy Dowty, Residence Inn by Marriott, Inc., and Marriott International, Inc. In this appeal from the trial court's grant of the Marriott defendants' motion for summary judgment, the evidence is viewed in favor of the non-movants. *Eiberger v. West*, 247 Ga. 767 (1) (281 SE2d 148) (1981).

Plaintiffs' record evidence showed that, while Dowty and the Millan family (husband, wife, and four children) were guests of a residence inn owned and operated by the two Marriott defendants, Dowty committed a sexual battery on Audrey. She is retarded and has the mental capacity of a first grader. Plaintiffs claim that Marriott had knowledge of prior criminal acts by Dowty and breached its duty to protect hotel guests. The Marriott defendants moved for summary judgment, asserting that Dowty had committed no substantially similar crimes so as to put Marriott on notice that he might sexually assault a child.

Annette Winfree, another hotel guest, testified that on July 12, 1993, she observed Dowty, Audrey, and another man at the pool. According to Winfree, when the other man left, Dowty entered the pool with Audrey and rubbed his hands over her breasts, buttocks, and between her legs. Winfree immediately telephoned her husband,

who telephoned the front desk of the hotel. Winfree's husband described the incident by the pool but did not identify the parties involved. The employee at the front desk investigated, but no one was observed at the pool. The employee reported the telephone call to the hotel security officer on duty that evening. Audrey later told her father what had happened.

Gwen Scott, a middle-aged hotel employee, testified that for several months prior to the Millan incident Dowty had engaged in repeated inappropriate and non-consensual sexual behavior toward her. He would walk up behind her and touch various parts of her body including her breasts. He repeatedly asked her for dates, even though she told him she was married.

Geraldine Hall, another hotel employee, testified that a week before the Millan incident, she was cleaning a bathroom when Young, an intoxicated hotel guest, came in and apprised her that she had seen a man at the pool grabbing children in their crotch and breast areas. Hall deduced that these were probably the Millan children, because there were few other children at the hotel. Hall went to the pool but everyone had left. Young did not specifically identify Dowty as the man involved in the incident concerning the other children until after the Millan incident. Hall testified that when Young reported the first incident, she referred to the man as "the weird guy"; that it was not difficult to determine who this was because Dowty had a foreign accent; that Hall discussed the incident with night security guard James Virden and that Virden began to watch Dowty. No further action was taken despite this alert. The night after the first incident, Virden encountered Dowty at the pool after it had closed. Dowty was intoxicated, and when Virden attempted to get him to leave, Dowty physically struck him.

The general manager testified that the role of employees in security matters is to be the "eyes and ears" of the hotel and to inform management of any inappropriate behavior by hotel guests. He acknowledged that Hall and Scott should have reported Dowty's behavior to management. According to a security consultant, the employees had not been adequately trained to report such behavior.

To this evidence, the following law applies. "Notice to the agent of any matter connected with his agency shall be notice to the principal." OCGA § 10-6-58. Actual notice to the agent constitutes actual, not merely constructive, notice to the principal. *Copeland v. Leathers*, 206 Ga. 280, 287 (2) (56 SE2d 530) (1949). "Although an innkeeper is not an insurer of the safety of the guests, it is bound to exercise ordinary care to protect its guests from unreasonable risks of which the innkeeper has superior knowledge, and if an innkeeper has reason to anticipate criminal acts, it has the duty to exercise ordinary care to guard against injury caused by dangerous characters. [Cit.]" *Matt v.*

*Days Inns of America*, 212 Ga. App. 792, 794 (443 SE2d 290) (1994), aff'd *Days Inns of America v. Matt*, 265 Ga. 235 (454 SE2d 507) (1995). "[T]he test is whether the prior criminal activity was sufficiently [and] substantially similar to demonstrate the landowner's knowledge that conditions on his property subjected his invitees to unreasonable risk of criminal attack so that the landowner had reasonable grounds to apprehend that the present criminal act was foreseeable." *Matt*, supra at 795. See also the expanded reiteration of the applicable principles in *Taylor v. Atlanta Center*, 208 Ga. App. 463, 465-466 (430 SE2d 841) (1993) (non-precedential).

Plaintiffs contend a jury must decide whether, as a matter of fact, Dowty's sexual battery on Audrey was reasonably foreseeable by defendants, based on his altercation with James Virden, his apparent actions toward Gwen Scott, and his prior fondling of children at the hotel pool.

The physical altercation with Virden, the hotel security guard, was not sufficiently similar to put defendants on notice of an unreasonable risk of a sexual assault. However, the other events do not preclude a finding that Dowty was a troublesome guest with respect to assaulting females. A report of previous fondling of children at the hotel pool constituted the same crime committed in the same place and manner as that perpetrated against Audrey and thus meets the substantially similar test. Marriott argues that the prior fondling incident could not have put it on notice that Dowty might do the same to another child, because Dowty was not identified as the perpetrator until after the Millan incident. Although Hall testified that Young did not specifically identify Dowty at first, the evidence, construed most strongly against the Marriott defendants as movants for summary judgment, *Piggly Wiggly Southern v. Bennett*, 217 Ga. App. 496, 497 (458 SE2d 138) (1995), would authorize a jury to find that Hall was provided with enough information to believe that Dowty was the individual and that Hall actually reported this to Virden before the Millan incident. Compare *J. C. Penney Co. v. Spivey*, 215 Ga. App. 680 (452 SE2d 191) (1994) (physical precedent only; Beasley, P. J., concurring specially: lack of any evidence of superior knowledge by defendant).

The Scott incident also meets the substantially similar test. In grabbing Scott's breasts and touching her body without her consent, Dowty committed the same sexual battery as that perpetrated against Audrey. Although the ages differed, the nature of the offenses on the same premises and in Dowty's same capacity as a guest, was the same. See generally *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148 (1) (464 SE2d 220) (1995).

There are four elements to any tort action: duty, breach, causation, and damages. *Rampell v. Williams*, 217 Ga. App. 292, 293 (2)

(457 SE2d 224) (1995). In this case, questions are raised as to how, if at all, the hotel breached its duty toward guests and whether any such breach could have been the proximate cause of Audrey's injury. Under the evidence, construed most favorably to plaintiffs, a jury could find that Dowty was the perpetrator of the offenses reported by Young to Hall, as well as those committed against Scott; that Hall's and Scott's notice of these acts constituted notice to the hotel; that the hotel was thereby obligated to at least question Dowty and Young concerning these incidents; and that this would or should have resulted in such action being taken against Dowty so as to have deprived him of the opportunity to commit his battery on Audrey at the hotel pool. Thus, whether the hotel breached its duty by negligently failing to protect guests from the dangerous guest on its premises and whether such breach was the proximate cause of the child's injury are jury questions. See generally *Bob v. Hardy*, 222 Ga. App. 550, 555 (6) (474 SE2d 658) (1996) (questions of negligence and proximate cause are peculiarly questions for the jury except in clear, plain, palpable and undisputed cases).

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

DECIDED JUNE 2, 1997 —
RECONSIDERATION DENIED JUNE 16, 1997 — 
 Before Judge Shoob.

*James A. Goldstein*, for appellants.

*Kirwan, Parks, Chesin & Miller, P. Bruce Kirwan, Holland & Knight, Alfred B. Adams III, Cheryl B. Reid*, for appellees.